Third case of the day. Appeal 17-2759, 17-2761, United States v. Adrian Tartareanu and Daniela Tartareanu. May it please the court. My name is Nishay Sanon. I represent the defendant appellants Adrian and Daniela Tartareanu before this court. What's before this court? This case has some history that's been before this court before. As your honors are aware, this court sent the case back for a new sentencing based on a finding that restitution to Bank of America may be improper. Because sentencing is a package deal under the Seventh Circuit law, the entire sentencing was vacated and the matter returned to Judge Simon for sentencing for both Daniela and Adrian Tartareanu. Mr. Alitos, who was involved in the previous plea, had a separate issue because he entered a plea of guilty and only had an issue as to restitution. The issues before this court during this appeal I think is an important one and that is what is the true definition of a victim under the sentencing guidelines. As this court is aware, even though the sentencing guidelines are no longer mandatory, determining the correct sentencing guideline is a starting point. Now, I do need to ask you this question. Are the defendants aware that they could end up with higher sentences, bigger fines if we vacate and remand to a different judge? They are, Judge. They are aware and in fact they were actually sentenced to harsher sentences when this case was remanded in this way. Even though the prison time and the supervisor release stayed the same on the resentencing, they were given a fine of $30,000 each. A fine is punishment. It's not like restitution where restitution is to make the victim whole. So their sentence actually on remand as for punishment purposes was increased because they were given a fine of $30,000 each. So yes, Your Honor, they are aware if this matter is returned again for resentencing that there is a possibility that the sentence could increase. But going back to what I believe one of the main issues before this case is, is whether or not Bank of America could actually be considered a victim in this case. Why does that matter under the intended loss measure? Because for loss purposes under 2B1.1 in determining who a victim is, if the individual entity or corporation is not a victim, even for actual or intended losses based on the Seventh Circuit case law, you wouldn't include that amount as to loss for guideline calculations. In this matter, majority of the quote-unquote. What's your intended loss case for that proposition? Judge, I refer you to Vitek Supply Company. That was an actual loss case? Judge, they talk about both actual and intended loss because the court cites specifically to the part which talks about intended or actual loss. That's just a recitation of what the guideline says. That's not, that doesn't make Vitek an intended loss case. It was an actual loss case. So it doesn't support your claim here. Well, Judge, I think if you take the case law of both Barrett and Vitek, it could affect intended loss because the question is how can there be any kind of loss, intended or actual, if the person is a co-conspirator or a cohort in the criminal activity, which is what we have here with Bank of America. You see the panel that heard the first appeal remarked, and I'm going to quote now, had the amount of the fraud been made the basis of a fine rather than restitution, the $893,015 would have gone to the Federal Treasury, a far worthier recipient of it than Bank of America in this case. That suggests to me that the original panel agreed that the amount of the loss did not change merely because the Bank of America was complicit. Is there a difference between the amount of the fraud and the amount of the loss for sentencing calculations? If not, seems that the loss issue was already resolved in the first appeal. In the first appeal, for guideline purposes, loss was not challenged. The only thing that was before the court was whether or not Bank of America could be considered a quote-unquote victim for restitution purposes. The issue of whether or not they were a victim for loss purposes under Duke 2B1.1 was not raised before the appellate court during the first appeal. It was raised at the underlying court, at the district court under the first appeal, but was never raised as a sentencing issue before the court. And what the court does in the first appeal, the other panel that was involved in the first appeal, is they differentiate what a victim for restitution purposes is and what a victim for loss purposes is under the guideline because they use the victim statute to determine whether or not Bank of America could fall under a person or entity that is entitled to restitution. For the purposes of intended loss, if the May the trial court consider Fannie Mae to be the victim? It seems that Bank of America had a practice of offloading its bad loans to Fannie Mae, which subsequently suffered the loss, right? Judge, based on my understanding of the facts, and I was not part of the trial, but the facts I recall is Bank of America had to go back and buy these loans. Because there was a situation where Bank of Fannie Mae returned loans back to the bank that it bought the loans from. The reason at sentencing, it was even a question of whether Fannie, the original sentencing, whether or not Fannie Mae was a quote unquote victim, and Fannie Mae was not considered to be a victim. It was Bank of America who provided over $1.5 million worth of the funds. And the money, when restitution was ordered in the first sentencing, was going to go back to Bank of America, not Fannie Mae, which is the problem that the first panel had because they said that Bank of America is not worthy of, and I believe that was their line, worthy of restitution given the fact that they were involved. At minimum, reckless. The original appellate court who heard the first appeal, at minimum said they were reckless. There is testimony throughout, even Judge Simon's quote at the original sentencing saying that Bank of America was aware of what was going on. I think you're about to ask me a question. No, sorry. No, I'm about to. Sorry, Judge. Go blind. Sorry. And the issue becomes is if Bank of America is a cohort or co-conspirator in this, and the evidence that was before the first sentencing judge, Judge Simon, and then was presented with additional evidence, if you look at the conduct of Bank of America and what they did and who was involved, because the one issue that's raised in Barrett and Vitek, or Vitek Supply Company, is whether or not these people were employees who were benefiting themselves or was the corporation receiving a benefit from the fraudulent conduct. This case is different from Barrett and Vitek because you have multiple people who are employees or agents of Bank of America who know, knows what is going on. You have Stephanie Riggs, the loan officer who was an employee of Bank of America. You have the underwriters who are approving and reviewing multiple loan applications from the same people. And I believe the numbers were set out of the number of loans that were given to the same people. Horton received nine loans in three months. McHugh received eight loans in two months. Hurtado received six loans in ten days. Stein got three loans. An individual, Gonzalez, got two loans. Stephanie Riggs, who is a bank employee, is the one who processed these loans. And part of this appendix and part of the exhibits that were provided in the second sentencing was a chart that indicates how Stephanie Riggs changes the information or supplies her own information to her own bank. Then moving forward from there, Judge, the Bank of America knew the down payments were not coming from these individuals. And the evidence is in the trial at the first sentencing and also presented at the second sentencing. And how they know that the down payments are not coming from the individual buyers, because that's the one thing that was argued consistently throughout the first sentencing and the second sentencing, is this. The title company. The testimony trial indicated that the title company knew that certain checks were coming from the defendants. The title company is the agent who has to follow the rules provided by Bank of America to the bank. Plus, given the fact that Bank of America was hit with a $16 billion mortgage fraud because of these liars loans or no-doc loans, they had full knowledge of what the defendants were doing. So they can't be just reckless in their conduct because they had full knowledge of what was going on. So at some point they become not only a reckless participant in the activities of the Tartanos, but they become an active participant in the fraud. And because it wasn't the Tartanos who put Bank of America's money at risk, it was Bank of America who put their money at risk. And that's what VTech Supply Company talks about is who put the money at risk. They are not a victim under the definitions of the guidelines under 2B1.1. And based on that, we believe the judge erred in finding that there was a 16-point enhancement under the guidelines. I see that I'm going into my rebuttal time, and I would like to save time for rebuttal. Unless your honors have any other questions regarding the specific issue we raised, I'd like to reserve my time. Thank you. Good morning, your honors. May it please the court. My name is Nathaniel Whalen, and I'm here on behalf of the United States of America. The issue in this case is not whether Bank of America is a victim. The guidelines do not even relate loss, either intended or actual, to victims. They don't use the word victim in there. They don't say that you need to identify a victim for intended loss. Really the issue in this case is what did the defendants intend to have happen here. And that's what intended loss focuses on, not whether the bank put its money at risk, not whether the defendants, you know, it's what the defendants believe were intended to occur. Here, the defendants owned these properties at issue in this mortgage fraud. They took buyers they knew were not going to be able to pay off mortgages, made the buyers look much more attractive, hid the source of the down payments from the bank, and then got loans on behalf of these buyers. They knew the buyers were never going to pay back. They didn't care if the buyers were going to suffer the loss. They didn't care if it was Bank of America. They didn't care if it was Fannie Mae. They didn't care if it was downstream investors. They didn't care if it was government. The point is they wanted to get these properties off their hands. They wanted to get money in their bank account, and that's what intended loss is. That's what this court focuses on. You know, the government cited, excuse me, Betz-Gaston as a case involving a defendant who induced lenders to make mortgage-backed loans that were much riskier than the lender realized. Bank of America didn't require much convincing. If the bank didn't care about the level of risk, it was assuming if there was no real danger, the Bank of America would stop doing business with the defendants. Does Betz-Gaston even apply here? Your Honor, Betz-Gaston does apply here. The point is that the defendants did take steps to ensure that the bank didn't know what was really going on here. Now, we understand this Court's opinion in the previous matter that was made abundantly clear to us that the bank isn't a victim worthy of restitution because of some of the steps they could have but didn't take. But the fraud in this case was about the down payment, and it was about the defendants writing and signing under oath that the buyers were providing the source of the down payments. That wasn't true. The defendants themselves were giving the down payment to the buyers, and then the buyers would give it to Bank of America. The defendants did this, Mr. Litos testified, because they understood that if the buyers couldn't make these payments right off the bat, red brick, the defendant's company was going to be blacklisted. So the defendants did just enough to prop up these buyers to get the mortgages and then to continue to first make the first two payments. The defendants didn't care what happened after that. They knew that the buyers were going to default. Now, let me address the argument that Bank of America knew that these down payments were coming from the buyers. There's no evidence to support that. The Tartarianos have cited testimony by Mr. Litos that someone from Coalition of Concern came in, and let me say that. Coalition of Concern is this third party entity that the defendants hid the down payments through. So they would give the money to Coalition of Concern. Coalition of Concern would then give it to the bank. It was still coming from the defendants. So during one of these closings, Mr. Litos says someone from Coalition of Concern comes in, gives the buyer the check, and then the buyer hands it over to the title agent. Even in that transaction, the defendants are still signing these documents under oath that the source of the down payment is coming from the buyers themselves. Anyone who's closed on a home before knows that checks are flying all over the place and people are coming in with different documents and providing lots of different things. Bank of America didn't know that the down payments were coming from these buyers. The defendants took every step they could to cover that up. Are you relitigating the first case? I'm not relitigating the first case, Your Honor. In fact, I wanted to point to the first case because the defendants now argue that Bank of America was a co-conspirator. This court already decided that wasn't the case. Twice, this court says that the district court judge rejected the defendant's argument that the bank was not entitled to restitution because it had been a co-conspirator. This court then continues, the judge was right about that. The next paragraph, the order of restitution is questionable because Bank of America, though not a co-conspirator of the defendants, does not have clean hands. There's no evidence that Bank of America is a co-conspirator. Now, the district court recognized Bank of America didn't have clean hands in this, but there's no evidence that the bank was in agreement with these defendants to engage in this fraud, and that's what a co-conspirator is. Your Honors, I'm happy to just briefly touch on the minor role reduction. Yeah, because the government, it's referred several times to the fact that Daniella had a real estate license, but did she need a real estate license to do any of the things that she did here? My understanding is she looked up prices of comparable properties, but is that information not available to anyone with a computer, you know, at this point in time? Why does her license matter to whether she is a minor participant? Your Honor, to be able to find comparables in the MLS website, which I apologize, I forget what that stands for, the government's expert testified that it needs to be a license, someone with a real estate license to be able to go out, go into the MLS website, and pull these comparables, and that's what you give to the appraiser. So if none of the defendants had a real estate license, they could not have done that, but regardless of the real estate license, a lot of the stuff she did in this case, she didn't need a real estate license for. She didn't need a real estate license to sign all the down payment checks. She didn't need a real estate license to attend the closing and commit fraudulent statements under oath. She didn't need a real estate license to provide these buyers about the fact that there are these renters that are being shuttled back and forth amongst all these houses to make them look more attractive. The district court sat through four days of trial. The district court heard numerous arguments in sentencing. It was able to evaluate the credibility of the witnesses, and it didn't clearly err in finding Daniella Tartagliano was not substantially less culpable than the average participant. And that's the case. Briefly on the principal arguments in mitigation, it's our position that these aren't principal arguments in mitigation. They're borderline frivolous, if not frivolous entirely, but the issue is waived because at each sentencing, the district court asked the defendants, have I addressed your principal arguments in mitigation? The defendants said yes each time. Now, in the reply brief, what they say is there was no need to pursue the point because the judgment had been imposed. Well, factually, that's not right. The judgment had not yet been imposed because the judge says, I'm going to impose this sentence, and I'll give counsel a chance to raise any other arguments they want. Here's the sentence. Have I addressed your principal arguments in mitigation? Counsel says yes, your honor. Then the court says in Adrian's sentencing, do you need any further clarification? Counsel actually at that point asked for clarification on the fine, so they knew it wasn't frivolous to question the court's reasoning at that point. Then the district court says, and I'm now going to impose the sentence as stated. This is a waiver under Garcia-Segura. It's what this court has asked district courts to do time and again, and Judge Simon did it in this case. In terms of the harmless error of the guideline calculation, we'll rest on our brief. Unless this court has any questions or unless this court has any other questions on anything, we would ask that you affirm the sentences. Anything? Thank you, your honor. Thank you very much. Your honors, to address the... Okay. It's on. To address one of the issues that Judge Rovner just asked is whether or not Betz-Gaston applies to or is similar enough to apply to this case. I put before your honor, if you look at the facts behind Betz-Gaston, which was the argument was made that the defendant did not cause a loss to the bank because the bank had already sold the loans. Those were the facts under that case. In this case, those are not the facts. Here you have a bank who was involved in the conduct, and there is more than sufficient evidence to show that this bank was involved and knew of the conduct and didn't care and approved of the conduct because it was their employees, their agents, their people who knew the facts of what was going on with their loans. The loan applications were taken by a Bank of America employee by the name of Stephanie Riggs. She is the one who modified the information provided by the buyers before she sent it on to Bank of America. The underwriters were the... A majority of the one or two underwriters worked on the whole information, Bank of America, about how many... None of this is relevant under the decision in Betz-Gaston, which said the lender's conduct might have made them inappropriate recipients of restitution, citing Litos, but it is not relevant to loss amounts. So this whole argument is just an irrelevancy. Well, Judge, in that case, there was never an argument to be made that the bank was part of the fraud. Here, the argument is being made that the bank is part of the fraud. It's just not relevant to determination of loss amount under the guidelines. For fraud. Who is the victim, whether there was a victim? Well, that's our position, Judge, that the bank is not a victim, so that... And that doesn't matter for intended loss. Well, Judge, if you take into consideration the way the case law is written and how they work, both parties appealed in Vitek because the issue was before it on loss calculation on whether or not the supply company or the meat provider had knowledge whether or not the meat was tainted by the unapproved FDA product. And in that case, in Vitek, it was said that the person who was in charge of the meat processor had too many hats. Here, you don't have that situation. If you look at the first sentencing in this case, it was based on actual loss. The second sentencing, all of a sudden, the government decides to now argue intended loss because they have a problem based on this court's first opinion on whether or not Bank of America is a victim or not. The determination under the guidelines for sentencing purposes obviously is a preponderance standard. It's not proof beyond a reasonable doubt as to the facts that support an enhancement or something else under the guidelines. So I believe that whether or not Bank of America is a victim, both for intended or actual loss, is an appropriate argument because whether or not, quote unquote, there's a victim, first of all. If someone is a co-defendant or is part of the fraud, there cannot be a victim at all because they were part of the participation of it. Again, as Vitek says, they put their own money at risk by knowing what the other defendants were doing. And they had full knowledge of that through their people, their employees and their agents. To address the issue of minor role that was brought up before the court, minor role, the question is whether or not Daniela, if you look at the average participant, and what we raised at the second sentencing was whether or not the court took into consideration who all the participants were to determine where Daniela fell in that spectrum. And what we raised before the court that there wasn't just three active participants and to look at those three individuals to determine what her role was, but there was a whole host of other individuals who had involvement in this fraud, including Litos, including Daniela, including Adrian. You had Joseph Aguirre and Mr. Rodriguez who were the recruiters. You had Victor Martin who was the recruiter. You had the closing company who was involved. You have the people at Coalition for Concern. You have Stephanie Riggs and Daryl Maiman who were the ones who were altering the applications. So if you look at this as the whole of all the people who were potentially involved in this fraud, where does Daniela fall in that? And the evidence at trial, even by Mr. Litos and quote unquote buyers who you could argue are the victims, indicate that she was just there with the keys. I think that was one of the quotes, that she showed up to the closings. But if you look at the totality of who provided what services, Daniela was a minor participant in the activities surrounding this matter. Unless this court has any questions, I have five seconds. I'm going to ask that this matter be resent to the district court for resentencing to a new district court judge. Thank you very much. Thank you to both sides and the case will be taken under advisement.